IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: ERN REYNOLDS,<br>   Debtor(s). | )<br>)<br>)<br>) | CHAPTER 7<br><br>CASE NO. 09-71964 |

---

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A.,<br>SUCCESSOR BY REASON<br>OF MERGER WITH WACHOVIA<br>BANK, NATIONAL<br>ASSOCIATION,<br><br>   Movant,<br><br>v.<br><br>CHARLES R. ALLEN, JR.,<br>TRUSTEE,<br><br>   Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Motion for Relief From<br>the Automatic Stay** |

---

### MEMORANDUM DECISION

The matters before the Court are the Motion for Relief from the Automatic Stay (the "Motion") filed by Wells Fargo Bank (the "Bank") against Charles R. Allen, Jr., Trustee of the Debtor's bankruptcy estate (the "Trustee"), the Debtor's Answer to the Motion filed by his counsel of record, and the Motion for Continuance or Alternatively a Stay (the "Continuance Motion") filed by the Debtor, pro se, as trustee for the Reynolds Living Trust, which is asserted to hold legal title to the property which is the subject of the Bank's Motion. These matters came on to be heard before the Court on February 7, 2011, and the Court, at the conclusion of such hearing, ruled from the bench that the Continuance Motion would be denied and the Motion for Relief would be granted for the reasons stated by the Court at that time on the record. Counsel

for the Bank was directed to prepare an order so providing.  Although the Court stated its reasons for its rulings in some detail at that hearing, it was apparent that the Debtor acting pro se did not find the Court's rationale persuasive.  Accordingly, the Court has decided to supplement its rulings from the bench with the following written decision for the benefit of the record and hopefully for the Debtor's understanding of the Court's rationale for its conclusions.

        The Debtor filed an individual Chapter 13 bankruptcy petition in this Court on July 31, 2009, and the case was converted to Chapter 7 upon the Debtor's motion on October 16, 2009.  At the time Debtor filed his petition, the property that is the subject of the Bank's Motion was held by the Debtor as the trustee of a trust established by his father.  According to the Debtor's answer to the Motion, the Debtor's father died on November 28, 2009, and, pursuant to the trust instrument, a 50% share of the trust was distributed to the Debtor.  The Debtor admitted in his answer that his resulting interest in the property became property of the estate because he received it within 180 days of the petition date.  As of the time of the filing of the Motion, the Trustee had not taken any action to sell the Debtor's interest in the property or abandon it, and the bankruptcy estate remained open.  The Debtor was granted a Chapter 7 discharge on August 10, 2010.  Because the Debtor had already been granted a discharge prior to the Motion's filing on January 6, 2011, Bank's counsel named the Trustee as its only respondent.  The Bank has alleged that over $14,000 of payments on the loan secured by the deed of trust are delinquent.  The Debtor's answer admits that a post-petition arrearage exists on the loan but contends that he is without sufficient information to know the precise amount of the arrearage.  The Debtor further asserts that he would like to enter into a reaffirmation agreement for the loan even though he has already received a discharge and cites language in 11 U.S.C. § 524(d) in support of that

desire.  In his pleading filed pro se he contends that his failure to enter into a reaffirmation agreement earlier was due to the professional negligence of his counsel and that he has a resulting claim against his bankruptcy attorney.  He also contended orally at the hearing that he has had a new appraisal done of the property encumbered by the Bank's deed of trust which would support a finding of significant equity in the property above the liens against it and further that he has applied for a HAMP Request for Modification[1] and that neither the Bank nor the Court may proceed with foreclosure activity while such Request is pending.  In the Continuance Motion the Debtor, proceeding pro se, cites his "Motion To Intervene, Interplead, & Prescribe Bond" (the "Intervention Motion") which he filed on February 3, 2011 and has noticed for a hearing before the Court on April 11, 2011.  This latter motion is filed at docket entry # 63.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  The matters before the Court all relate to a motion seeking relief from the automatic stay, which is expressly included in those proceedings which are deemed to be "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(G).

The automatic stay in bankruptcy arises pursuant to 11 U.S.C. § 362(a) upon the filing of a petition.  It prohibits a variety of actions against the debtor, the debtor's property, or property of the bankruptcy estate created by 11 U.S.C. § 541.  While the automatic stay can be

---

[1] "HAMP" is the acronym for the Home Affordable Modification Program, a program established by the U.S. Department of the Treasury to give incentives to loan servicers to modify the terms of troubled mortgages and thereby reduce the number of foreclosures.  *See generally* Making Home Affordable.gov:  Help for America's Homeowners, http://www.makinghomeaffordable.gov/index.html.

modified or terminated by action of the bankruptcy court, it also may terminate by operation of law. Specifically, § 362(c) provides in sub-sections (1) and (2) as follows:

> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>
>> (A) the time the case is closed;
>>
>> (B) the time the case is dismissed; or
>>
>> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

Accordingly, the grant of a Chapter 7 discharge to the Debtor, which in this case occurred on August 10, 2010, terminated the automatic stay in every respect other than with regard to acts against property of the bankruptcy estate. For that reason the Court concludes that only the Trustee had standing to object to the Motion which sought only the modification of the automatic stay to permit the Bank to enforce its security rights against its collateral which as of the time of filing its Motion remained property of the bankruptcy estate. As a corollary to that conclusion, the Court likewise rules that neither the Debtor nor the Debtor as trustee of the Reynolds Living Trust has any standing to contest relief which the Bank seeks against the Trustee and property of the bankruptcy estate. The Trustee did not file any response to the Motion or appear at the hearing to oppose the relief sought by the Motion. Indeed, in the Trustee's Final Report docketed on January 28, 2011, he indicated that the bankruptcy estate's interest in the property would be abandoned at the close of the case.

        As to the suggestion that the Court reimpose the automatic stay as to actions

against property of the Debtor or in which he has some beneficial interest, the Supreme Court itself has made clear that although the bankruptcy court is a court of equity, it does not have power to grant relief which is contrary to applicable provisions of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). While the Fourth Circuit Court of Appeals has held that, in the context of bankruptcy, "it is especially appropriate to consider equitable principles and to disregard technicalities," *General Motors Acceptance Corp. v. Smith,* 377 F.2d 271, 274 (4th Cir. 1967), that Court has also held that "these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). In the circumstances presented in this case, the Court has no authority to ignore the statutory provision that the automatic stay does not continue as to a bankruptcy debtor personally or his or her property beyond the grant of a Chapter 7 discharge to the Debtor.

The Continuance Motion sought a delay in the determination of the Bank's Motion until the Debtor, proceeding pro se as trustee of the Reynolds Living Trust, could be heard upon his Intervention Motion set for a hearing on April 11, a period of more than two months beyond the February 7 hearing date on the Bank's Motion. For the Court to grant such a continuance over the Bank's opposition when it has concluded that as a matter of law neither the Debtor individually nor as trustee of his family's trust has any standing to oppose the relief sought in the Motion would fly directly in the face of § 362(e), which obliges a bankruptcy court to act within thirty days of the filing of a motion seeking relief from the automatic stay unless the

parties in interest otherwise agree or the court concludes that "there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing." 11 U.S.C. § 362(e)(1).  Based on its understanding of the applicable law and the facts presented in this case, the Court concludes that there is no "reasonable likelihood" that it will be persuaded that the Debtor individually or as trustee of the Reynolds Living Trust has any lawful basis to oppose the relief sought in the Motion.

          The Debtor, both through counsel and pro se as trustee of the Reynolds Living Trust, has expended considerable effort on the question of whether the Court at this point could approve the Debtor entering into a reaffirmation agreement for the Bank's loan.  The Court has noted on the record why it believes the asserted interpretation of § 524(d)(1) is in error,[2] but

---

[2] Debtor contends that a portion of § 524(d) supports the proposition that an enforceable reaffirmation agreement may be entered into after the discharge has been granted.  The relevant portion of the statute pertinent to a Chapter 7 case reads as follows: "In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727 . . . of this title, the court may hold a hearing at which the debtor shall appear in person.  At any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted.  If a discharge has been granted and if the debtor desires to make [a reaffirmation agreement] and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing . . . ."  While this statement standing alone does seem to lend some support to the Debtor's position, reading the quoted portion in the context of the other subsections dealing with reaffirmation agreements persuades the Court that the Debtor's interpretation is incorrect.  A debtor wishing to reaffirm a debt is required by 11 U.S.C. § 524(c)(1) to make the reaffirmation agreement prior to the grant of a discharge. Moreover, the wording in the very passage cited by the Debtor uses the past tense to refer to the reaffirmation agreement in question: "was not represented by counsel during the course of negotiating such agreement."  The most reasonable interpretation of this language is to refer to an agreement which has already been reached with the creditor but has not yet been approved by the court when such approval is requisite to such agreement's effectiveness. If the debtor is not represented by counsel during the course of negotiating the reaffirmation agreement, § 524(c)(6)(A) requires the court to approve the agreement unless the debt being reaffirmed is "a consumer debt secured by real property." 11 U.S.C. § 524(c)(6)(B).  To adopt the interpretation proposed by the Debtor would create a direct conflict between different sub-sections of the same statutory section.

6

believes that such issue in the final analysis is irrelevant.  That conclusion follows from the voluntary nature of reaffirmation agreements and the absence of such an agreement in this case.  Although Congress eliminated the ability of a debtor to keep collateral that is personal property without either reaffirming the secured debt or redeeming the collateral, *see Daimler Chrysler Fin. Servs. Ams., LLC v. Jones (In re Jones)*, 591 F.3d 308, 311–12 (4th Cir. 2010), it has not eliminated this "ride-through" option for debts secured by real property.  *In re Lopez*, 440 B.R. 447, 448 (Bankr. E.D. Va. 2010); *In re Wilson*, 372 B.R. 816, 820 (Bankr. D.S.C. 2007).  Thus, in cases where the debtor is current on his or her obligation on a loan secured by real property and is not otherwise in default, the debtor may retain the collateral without reaffirming the obligation simply by continuing to make the regular contractual payments and otherwise abiding by the terms of the original loan agreement.  However, where, as here, a debtor is not current on the obligation, a reaffirmation agreement would provide some succor only if the creditor agreed that the debt could be reaffirmed on modified terms of payment.  Such a reaffirmation agreement, however, would be strictly voluntary on the creditor's part and could not be compelled by either the debtor or the court.  *See In re Whatley*, 16 B.R. 394, 396–97 (Bankr. N.D. Ohio 1982).  Because the Bank has refused to enter into a reaffirmation agreement with the Debtor, the asserted authority of the Court to approve such an agreement after the discharge, if such were the case, simply would have no bearing on the propriety of the Bank's Motion.  Even if the Debtor had entered into a reaffirmation agreement prior to the granting of a discharge, such fact would impose no legal restriction upon the Bank enforcing its security rights against the collateral on the ground of payment default.  In this case the Debtor does not dispute that a current default exists in the obligation held by the Bank.  Although he doesn't concede the

specific amount alleged by the Bank to exist, he does not point out any particular objections to its figures. Accordingly, even if the Debtor had entered into a valid reaffirmation agreement, such occurrence would not offer any defense to the Bank's Motion.

Furthermore, even if the Debtor's interpretation of the language in § 524(d)(1) were upheld, it would have no apparent relevance to the issues before this Court. That assessment is based on the fact that this Court does not hold discharge hearings in Chapter 7 cases, albeit that it has discretion to do so by virtue of the language noted by the Debtor. This Court is not aware of any other bankruptcy courts which do hold discharge hearings in Chapter 7 cases so it believes that its practices in this regard are in conformity with general bankruptcy court procedures. It does hold hearings, when needed under the language of § 524, to consider requested approval of reaffirmation agreements, but it has consistently held that such agreements must be entered into prior to the granting of a discharge. *See In re Washer*, No. 05-73465, slip op. at 2 (Bankr. W.D. Va. Dec. 30, 2005). Lastly, the language relied upon by the Debtor relates to bankruptcy debtors who have not been represented by counsel in connection with the negotiation of a reaffirmation agreement. In this case the Debtor has been represented by counsel and that status has not changed. This Court has previously held that counsel may not exclude reaffirmation agreement representation from the scope of their bankruptcy responsibilities to their clients. *See In re Harvey*, No. 10-71616, slip op. at 11 (Bankr. W.D. Va. Sept. 21, 2010); *In re Allison*, No. 09-71737, slip op. at 2 (Bankr. W.D. Va. Dec. 4, 2009).

Finally, the Court needs to address the question of the HAMP loan modification request and the effect of the pendency of such request upon this Court's consideration of the Bank's Motion. It is critical in this regard to appreciate the limited legal scope of the Court's

rulings. By granting the Motion this Court is not making any adjudication of the Bank's right, if any, under applicable non-bankruptcy law to proceed with foreclosure of the deed of trust securing its loan. Rather this Court is simply ruling that there is no bankruptcy restriction upon whatever the rights of either the Bank or the Debtor may be with respect to any enforcement of the deed of trust. To be even more specific, the Court is simply recognizing that the automatic stay in bankruptcy is no longer in effect with respect to any enforcement action by the creditor against property in which the Debtor may have some beneficial interest and that cause has been shown to lift the stay against proceeding against property of the bankruptcy estate, a result to which the Trustee has not made any objection. The Court's ruling does not affect any right the Debtor may have to assert in some other forum having jurisdiction in the premises any contention that the Bank may not proceed with a foreclosure for so long as the loan modification request remains unresolved.

An order setting forth the Court's rulings will be entered contemporaneously herewith.

Decided this 10th day of February, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE